Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| DENNISSE DÍAZ MERCADO, MILEYKA COLLAZO, FRANCISCO J. RIVERA Y PEDRO J. RIVERA<br><br>*Recurrente*<br><br>v.<br><br>OFICINA DE GERENCIA DE PERMISOS E INNOVATTEL PROPERTIES, LLC PROYECTO FACILIDADES DE TELECOMUNICACIONES – LA PLATA AIBONITO SITE<br><br>*Recurrido* | KLRA202400354 | Revisión Administrativa procedente de la Oficina de Gerencia de Permisos<br><br>Caso Núm.: 2024-581340-SDR-300972, impugnando el permiso de construcción 2022-418628-PCOC-040073<br><br>Sobre: Impugnación de Permiso de Construcción |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece la parte recurrente, Dennisse Díaz Mercado, Mileyka Collazo, Francisco J. Rivera y Pedro J. Rivera, (parte recurrente), y solicita que revisemos una *Resolución* emitida el 3 de abril de 2024, notificada el día 14 de mayo de 2024, por la Oficina de Gerencia de Permisos (OGPe). En síntesis, la parte recurrente alega que la OGPe expidió un permiso de construcción en contravención, y solicita que se revoque el permiso otorgado a Innovattel Properties LLC (parte recurrida o Innovattel).

Por los fundamentos que expresamos a continuación, **confirmamos** la determinación recurrida.

## I.

El 28 de abril de 2022, Innovattel presentó la *Recomendación Ambiental* para el proyecto denominado facilidades de telecomunicaciones - La Plata Aibonito Site, para la construcción de una torre de telecomunicaciones para la co-ubicación de facilidades

Número Identificador
SEN2024 _____

inalámbricas. Se alegó que la facilidad tendrá capacidad para albergar los equipos, de por lo menos, 3 compañías de telecomunicaciones. La *Recomendación Ambiental* fue expedida el 22 de junio de 2024, y la misma contaba con las recomendaciones de las diferentes entidades gubernamentales concernidas.

El 14 de junio de 2022, fue presentada la Evaluación Ambiental (EA) y, el 28 de octubre de 2022, la Oficina de Gerencia de Permisos (OGPe) determinó que la EA sometida por la agencia proponente para la acción propuesta, cumple con todos los requisitos de la Ley sobre Política Pública Ambiental, Ley Núm. 416 de 22 de septiembre de 2004, según enmendada[1], por lo cual, se dio por aprobada la EA y así se dio por terminado el proceso de evaluación ambiental.

El 16 de octubre de 2023, Innovattel sometió *la solicitud de permiso de construcción certificado*. El 18 de octubre de 2023, fueron notificados[2] los colindantes de la presentación del permiso de construcción ante la OGPe. Referente al predio donde se propuso la construcción de la facilidad de telecomunicaciones, este es parte de un solar ubicado en la Carretera 728, Barrio La Plata, en el Municipio de Aibonito, fuera del área inundable.

Como parte de la solicitud de construcción, se incluyó un estudio de suelo[3]. Se realizaron los siguientes trámites:

   a. Solicitud de Recomendación medioambiente.
   b. Solicitud de Recomendación – arqueología y conservación histórica.
   c. Solicitud de Recomendación Medioambiente.
   d. Preconsulta Arqueológica de conservación histórica.
   e. Preconsulta Departamento de Evaluación de Cumplimiento Ambiental.
   f. Solicitud de Recomendación- Salud y Seguridad.
   g. Solicitud de Recomendación Infraestructura.
   h. Preconsulta medioambiente.
   i. Permiso Único Incidental.

---

[1] 12 LPRA secc. 8001.
[2] Véase apéndice 3 de la *Solicitud de Reconsideración sobre Paralización de Obra.*
[3] Véase apéndice 7 del *Recurso de Revision Administrativa;* Report for the subsurface exploration and geotechnical services for the proposed telecommunication tower La Plata Site at La Plata ward of the Municipality of Aibonito, Puerto Rico realizado por la firma Despiau Associates Consulting Geotechnical Engineers.

j. Certificación de Inundabilidad - Junta de Planificación.
k. Federal Aviation Administration Office- endoso favorable.
l. United States Department of Interior- Fish and Wildlife Services – endoso favorable.

La OGPe autorizó la solicitud el 3 de abril de 2024 para la instalación de una Torre de Telecomunicaciones. Inconforme, la parte recurrente presentó el 31 de mayo de 2024, ante la *División de Revisiones Administrativas,* la solicitud de revisión administrativa. El 14 de junio de 2024, la OGPe determinó No Acoger la solicitud de revisión administrativa.

Insatisfecho con tal determinación, el 3 de julio de 2024, la parte recurrente acudió ante este foro revisor y solicitó que revisemos la determinación del foro administrativo esgrimiendo los siguientes errores:

*PRIMER SEÑALAMIENTO*: ERRÓ LA OGPE AL REALIZAR LA EVALUACIÓN AMBIENTAL DEL PROYECTO CUANDO SURGE DE LA EVIDENCIA SUSTANCIAL EN EL EXPEDIENTE QUE OGPE EVALUÓ Y DETERMINÓ LA EVALUACIÓN AMBIENTAL ANTES DE NOTIFICAR A LOS PETICIONARIOS SOBRE LA SOLICITUD DEL PERMISO, EXCLUY[É]NDOLOS DE PARTICIPAR EN DICHA EVALUACIÓN EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.

*SEGUNDO SEÑALAMIENTO*: ERRÓ LA OGPE AL OTORGAR EL PERMISO DE CONSTRUCCIÓN IMPUGNADO SIN DETERMINACIONES DE HECHO NI CONCLUSIONES DE DERECHO CUANDO LA LEY NÚM. 89-2000, Y VARIAS OPINIONES DE ESTE HON. TRIBUNAL DE APELACIONES HAN CONCLUIDO QUE ESTE TIPO DE PERMISO ES DE NATURALEZA DISCRECIONAL, Y REQUIERE DICHAS DETERMINACIONES Y CONCLUSIONES.

*TERCER SEÑALAMIENTO*: ERRÓ LA OGPE AL OTORGAR EL PERMISO SIN LA DEBIDA CONSULTA DE UBICACIÓN, CON DETERMINACIÓN DE DEMOSTRACIÓN CLARA DE QUE DICHA UBICACIÓN ES LA ÚNICA ALTERNATIVA PARA SATISFACER DICHA NECESIDAD, NI QUE ES INEVITABLE LA UBICACIÓN DE UNA TORRE DE TELECOMUNICACIÓN EN UN ÁREA ECOLÓGICAMENTE SENSITIVA, COMO RESULTA QUE ES DICHA FINCA SEGÚN LA BASE DE DATOS DE LA J.P., Y SIN LA DEBIDA VISTA PÚBLICA MANDATORIA; DE LA SEC. 9.11.2.2, REGLAMENTO CONJUNTO 2023.

*CUARTO SEÑALAMIENTO*: ERRÓ LA OGPE AL OTORGAR PERMISO A INNOVATTEL PARA CORTAR LA MITAD DE LAS RAÍCES, EN LA LÍNEA DE GOTEO, DE UN ÁRBOL MADURO, QUE NO LE PERTENECE A INNOVATTEL Y QUE NO UBICA EN SU FINCA, SIN QUE SE AUTORIZARA UN DEBIDO PERMISO ÚNICO INCIDENTAL EN EL QUE INNOVATTEL PROPUSIERA UN PLAN DE TRABAJO SEGÚN LAS MEDIDAS DE PROTECCIÓN PARA ÁRBOLES A CONSERVAR.

A su vez, la parte recurrente presentó *Urgente Solicitud de Auxilio de Jurisdicción.* El día 3 de julio de 2024, este Foro emitió *Resolución* y declaramos No Ha Lugar a la solicitud de auxilio y concedimos treinta (30) días para que las partes presentaran su posición sobre los méritos del recurso. Posteriormente, la parte recurrente presentó *Urgente Segunda Solicitud de Auxilio de Jurisdicción,* en la que arguyó que se les negó a los colindantes participar del proceso de evaluación ambiental, y que, además, no se consultó a un geólogo sobre el proyecto.

Seguidamente, el 10 de julio de 2024, este Foro emitió *Resolución* concediendo a las partes recurridas hasta el lunes, 15 de julio de 2024 para expresarse sobre la *Urgente Segunda Solicitud de Auxilio de Jurisdicción.* El 17 de julio de 2024, la parte recurrente presentó *Moción Informativa y Reiterando Urgente Segunda Solicitud de Auxilio de Jurisdicción.*

El 18 de julio de 2024, este Foro emitió *Resolución* concediéndole a la parte recurrida un plazo final para que expresara su posición. El 23 de julio de 2024, el Municipio de Aibonito presentó *Alegato de Amicus Curiae.* En esencia, alegó que la OGPe quebrantó el debido proceso de ley, debido a que no le permitió a los colindantes expresarse; además, que la construcción de una torre de telecomunicaciones está prohibida en terrenos susceptibles a deslizamientos y derrumbes. A su vez, arguyó que el solar donde se va a construir la torre de telecomunicaciones es de uso público, entiéndase, de propiedad del Municipio de Aibonito y no del señor Jorge Luis Mercado Collazo y la señora María Virgen Torres Berríos, quienes son los arrendadores del terreno donde Innovattel enclavará la torre de telecomunicaciones. Razonó el Municipio de Aibonito, que el contrato de arrendamiento entre Innovattel, el señor Jorge Luis Mercado Collazo y la señora María Virgen Torres Berríos, (arrendadores) es nulo.

El 23 de julio de 2024, esta Curia emitió Resolución en la que admitió la comparecencia del Municipio de Aibonito como *Amicus Curiae* y declaró *Ha Lugar* la paralización de los procedimientos.

El 2 de agosto de 2024, la OGPe presentó *Alegato de la Oficina de Gerencia de Permisos al Recurso de Revisión Judicial*, en síntesis, alegó que existe una presunción de corrección de la determinación de la agencia administrativa, en este caso, OGPe. Adujo que el debido proceso de ley fue cumplido, esto, conforme con la *Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico,* Ley Núm. 89 de 6 de junio de 2000, según enmendada[4]; *"Ley para la Reforma del Proceso de Permisos de Puerto Rico",* Ley Núm. 161-2009, según enmendada[5]; *Reglamento Conjunto para la evaluación y expedición de permisos relacionados al desarrollo, uso de terrenos y operación de negocios* (Reglamento Conjunto 2023); entre otras. Ese mismo día, Innovattel presentó *Solicitud de Reconsideración sobre Paralización de Obra.* Especificó que, el informe del United States Geological Service es una guía y no se atempera al espacio de terreno donde se va a enclavar la torre de telecomunicaciones; además, razona que la Ley Federal *"Telecommunications Act of 1996[6]",* ocupa el campo, sin embargo concede que los estados y/o territorios retengan jurisdicción sobre la zonificación local. Esbozó, que el Reglamento Conjunto de 2023 establece el marco regulatorio sobre los permisos para el desarrollo.

Por otra parte, adujo que el Municipio de Aibonito preparó el *Plan de Mitigación Contra Peligros Naturales 2021.* En el mismo, estableció que, durante y luego del Huracán María, no hubo deslizamiento en el Bo. La Plata de Aibonito[7]. Sobre los movimientos

---

[4] 27 LPRA secc. 321.
[5] 23 LPRA secc. 9024 *et. seq.*
[6] 110 Stat. 56, 47 USCA sec. 151 *et. seq.*
[7] Véase Apéndice 6 de la *Solicitud de Reconsideración sobre Paralización de Obra.*

sísmicos, alegó que la parte recurrente no justificó ni fundamentó que, de haber un movimiento telúrico, como la torre de telecomunicaciones se afectará. En cuanto a la alegación del Municipio de Aibonito en su *Amicus Curiae* con relación a que el contrato otorgado entre Innovattel y el señor Jorge Luis Mercado Collazo y la señora María Virgen Torres Berríos es nulo, Innovattel presentó como prueba la escritura pública[8] otorgada ante el notario público Roberto Bayrón Adames, en donde se reconoce que los arrendadores son dueños en pleno dominio de las propiedades A (en esta se hará la construcción de la antena de telecomunicaciones) y B (esta última es dedicada a Uso Público)[9]. Por ello, solicitó como remedio que se reconsidere la Resolución que ordena la paralización de los procedimientos.

Con el beneficio de la comparecencia de ambas partes, estudiado el expediente apelativo, así como, estudiado el derecho aplicable, procedemos a resolver.

**II.**

**-A-**

La "*Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico*", Ley Núm. 89 de 6 de junio de 2000, según enmendada[10], (Ley 89), tiene como política pública [...] requieren de la utilización de torres para la colocación de antenas que permitan el libre tráfico de sus señales de transmisión, servicio que es importante y que impacta todas las áreas de nuestro entorno social. La legislación pretende armonizar los intereses comerciales con el de los ciudadanos de modo que se logre una convivencia sana y una mejor calidad de vida y por último la co-ubicación ha demostrado ser una de las prácticas que reduce

---

[8] Véase Apéndice 10 de la *Solicitud de Reconsideración sobre Paralización de Obra.*
[9] Véase Apéndice 7 de la *Solicitud de Reconsideración sobre Paralización de Obra.*
[10] 27 LPRA secc. 321.

la proliferación de torres ya que permite el que más de una compañía de telecomunicaciones ubique sus facilidades en una misma torre.

Por otra parte, la Junta de Planificación deberá adoptar todas las reglas y reglamentos necesarios para lograr el cumplimiento de esta Ley[11].

Además, bajo la *Ley sobre la Construcción, Instalación y Ubicación de Torres de Telecomunicaciones de Puerto Rico"*[12]:

> Se le requiere a los proponentes de un proyecto para la ubicación o construcción de una torre de transmisión que, previo a la concesión de una autorización o permiso para la construcción de dicha torre por la agencia o ente gubernamental correspondiente, notifiquen a los colindantes de cualquier permiso o autorización solicitado ante dichas entidades gubernamentales para la ubicación o construcción de torres en las cuales se instalarán estaciones de transmisión de frecuencia radial "antenas" de carácter comercial y que se le requiera a los proponentes notificar a los colindantes en un radio de cien (100) metros en cualquier dirección tomando como centro la ubicación propuesta de la torre y que la misma incluya el nombre del proponente, relación del proyecto, ubicación exacta, número de caso ante la Agencia y todo otro detalle que la Junta bajo reglamento entienda necesario exigir.

**-B-**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley 161 de 1 de diciembre de 2009, según enmendada[13], (Ley Núm. 161), fue promulgada para establecer el nuevo marco legal y administrativo que habría de guiar la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del Gobierno de Puerto Rico. Su objetivo es transformar el sistema de permisos de Puerto Rico de modo que el mismo sea uno más transparente, ágil, confiable y eficiente[14]. Mediante dicha ley existe el término de Pre-Consulta[15]:

> A partir de la vigencia de esta Ley, cualquier persona que interese un permiso, licencia, certificaciones, autorizaciones, recomendaciones y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico podrá solicitar a la Oficina de Gerencia de Permisos o al Municipio Autónomo con Jerarquía de la I a la V, según aplique, una orientación en la cual se identificarán las

---

[11] *Íd.*
[12] 27 LPRA secc. 326.
[13] 23 LPRA secc. 9024 *et. seq.*
[14] *Exposición de Motivos* de la Ley Núm. 161-2009.
[15] 23 LPRA secc. 9018a.

disposiciones de ley y reglamentarias aplicables a tal acción, actividad o proyecto propuesto y la información que conforme a ésta deberá, en su día, presentar el solicitante. De requerirlo el solicitante, acompañando una descripción del proyecto, se le proveerá una lista de los permisos o autorizaciones que, a tenor con las disposiciones de ley y reglamentarias aplicables, deberá obtener para poder comenzar la operación, y de ser aplicable, la construcción del proyecto. En la evaluación de la pre-consulta participarán representantes de los Gerentes de Permisos o el Director de la División de Evaluación de Cumplimiento Ambiental, según aplique a discreción del Secretario Auxiliar o del Director Regional. Se creó la OGPe, entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos, así como de las consultas de ubicación.

Por otro lado, la Ley 161 contempla la participación en el proceso de la evaluación de solicitudes de permisos o procedimientos de recalificación y variaciones de uso[16]:

El Reglamento Conjunto de Permisos establecerá los mecanismos a través de los cuales tendrá lugar la participación de personas distintas al solicitante en el proceso de evaluación de determinaciones finales y conforme a lo dispuesto en el Capítulo XV de esta Ley. En los procedimientos de recalificación y variaciones de uso el Reglamento Conjunto dispondrá para la celebración de vistas públicas.

Con relación a la *Intervención y Participación*[17]:.

(a) Intervención – Cualquier persona interesada en ser parte del proceso de evaluación de determinaciones finales, permisos, así como cualquier procedimiento adjudicativo requerido bajo las disposiciones de esta Ley deberá presentar una solicitud de intervención. El contenido, evaluación, adjudicación y revisión de determinaciones finales sobre solicitudes de intervención se regirá por lo dispuesto en la Ley de Procedimiento Administrativo Uniforme [Nota: Derogada y sustituida por la Ley 38-2017]. Los detalles sobre el proceso de intervención deberán reflejarse en el Reglamento Conjunto.
(b) Participación – La Oficina de Gerencia de Permisos integrará mecanismos de participación ciudadana mediante reglamentación, que incluya la solicitud y recibo de comentarios del público en general, vistas públicas, recibo y reconocimiento en expediente de documentos, ponencias, fotografías y otros tipos de documentos, entre otros mecanismos de participación. Esta participación no significará que sean considerados como parte, a menos que se haya cumplido con lo dispuesto en el acápite anterior.

**-C-**

A tenor con las facultades delegadas a la Junta de Planificación de Puerto Rico mediante la Ley Núm. 75 de 24 de junio

---

[16] 23 LPRA secc. 9018e.
[17] 23 LPRA secc. 9025a.

de 1975, según enmendada, conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico, la Ley Núm. 161 y de conformidad con la Sección 2.13 de la Ley Núm. 38-2017 se creó el *Reglamento Conjunto para la evaluación y expedición de permisos relacionados al desarrollo, uso y operación de negocios,* (Reglamento Conjunto)*.* El referido reglamento fue creado para que la Junta de Planificación y la OGPe pudiesen continuar cumpliendo con sus deberes ministeriales de velar por la protección de los recursos naturales, el ejercicio del derecho constitucional al disfrute de la propiedad y proteger los servicios provistos a la ciudadanía.

En el *Glosario de Términos* del Reglamento Conjunto se define la palabra *ministerial* de la siguiente forma:

> **Ministerial—**Describe una determinación **que no conlleva juicio subjetivo** por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. **El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada**. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario solo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (por ejemplo, Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales. (Énfasis provisto).

En oposición, en el referido *Glosario* se define el término *discrecional* de la siguiente manera:

> **Discrecional—**Describe una determinación que **conlleva juicio subjetivo** por parte de un funcionario público, Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Estos, utilizan discreción especial o juicio para llegar a su determinación, ya que **esta determinación involucra más allá del uso de estándares fijos o medidas objetivas**. El funcionario, Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe ser realizada. (Énfasis provisto).

El Reglamento Conjunto 2023 establece en su sección 9.11.2.2 sobre Ubicación en áreas ecológicamente sensitivas.

> Se cumplirá en estas áreas con las siguientes disposiciones:
> a. Se observarán para dichas aéreas las normas promulgadas para la ubicación y construcción de estructuras, si las hubiera, mediante la tramitación de una Consulta de construcción de estructuras, si las hubiera, mediante la tramitación de una Consulta de Ubicación.
> b. De no existir normas especiales, no se autorizará la ubicación salvo en aquellas situaciones de necesidad pública donde se demuestre claramente que dicha ubicación es la única alternativa para satisfacer dicha necesidad, considerando los últimos avances tecnológicos disponibles.
> c. Cuando se determine inevitable la ubicación de una torre de telecomunicación en un área ecológicamente sensitiva se tomarán las medidas para reducir al máximo el impacto adverso visual y estético de la misma.
> d. La celebración de una vista es mandatoria previo publicación de un aviso de prensa, conforme a lo dispuesto en el Capítulo 2.1 del Tomo II.
> e. Armonía con la Estética y en el Entorno:
> 1. Diseño de Camuflaje;
> a). Toda nueva ubicación, instalación o construcción de torre de telecomunicaciones o la instalación de instalaciones de telecomunicaciones deberá armoniza al máximo con la estética y el entorno de la localidad o sector en que se proponga, especialmente cuando sea indispensable su ubicación o instalación o construcción en áreas de reserva naturales, áreas urbanas, zonas históricas y a lo largo de las autopistas del País y rutas escénicas.
> b). En aquellos casos en que utilicen edificios como torres, las instalaciones deben esta integradas al diseño del edificio.
> […]
> f. Recomendación del Gerente de Medioambiente de la OGPe. Como parte del proceso de evaluación de una consulta de ubicación para la instalación y ubicación de estas torres dentro de un área ecológicamente sensitiva, tendrán que obtenerse las recomendaciones del Gerente de Medioambiente de la OGPe, quien recomendara las medidas de mitigación correspondientes, incluyendo aquellos casos donde la ubicación de la torre o instalación de telecomunicaciones sea en la zona cárstica, conforme las disposiciones de la Ley 292-1999…

**-D-**

Cabe destacar que, es norma reiterada que las decisiones emitidas por los organismos administrativos merecen nuestra deferencia. Como foro revisor, no debemos intervenir con las decisiones de las agencias administrativas a menos que se señale evidencia contenida en el expediente administrativo que derrote la presunción.

Es norma reiterada que las decisiones de un foro administrativo gozan de una presunción de corrección y como tal merecen gran deferencia por parte de los tribunales. De igual forma, "las conclusiones de estas agencias merecen gran deferencia por parte de los tribunales, por lo que debemos ser cuidadosos al intervenir con las determinaciones administrativas"[18].

Esta deferencia tiene su fundamento en la vasta experiencia y el conocimiento especializado que ostentan las agencias acerca de los asuntos que les son encomendados[19]. Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia[20]. Corresponde a los tribunales analizar las determinaciones de hechos de los organismos administrativos amparados en esa deferencia y razonabilidad[21].

Ahora bien, esta norma de deferencia de ningún modo puede afectar el alcance de la facultad de revisión de los tribunales[22]. La Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (Ley Núm. 38-2017)[23], dispone el alcance de la revisión judicial de las determinaciones de las agencias. En lo pertinente, establece que:

> El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos[24].

---

[18] *González Segarra et al. v. CFSE*, 188 DPR 252 (2013); *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 103 (2012); *Acarón et al. v. D.R.N.A.*, 186 DPR 564 (2012).
[19] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[20] *Íd.*
[21] *González Segarra et al. v. CFSE, supra.*
[22] *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950 (2007).
[23] 3 LPRA sec. 9601, *et seq.*
[24] 3 LPRA sec. 9675.

En lo concerniente a las conclusiones de derecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[25]. De ordinario, al revisar las decisiones de las agencias, los tribunales debemos brindar gran deferencia y respeto a las interpretaciones del estatuto que sean efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento. En *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial, a saber:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.

La revisión judicial de decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción[26].

**-E-**

El "Código Municipal de Puerto Rico" [Ley 107-2020, según enmendada[27], establece en su Artículo 2.016 — Bienes Municipales, lo siguiente:

> El patrimonio de los municipios estará constituido por el conjunto de bienes, derechos y acciones que le pertenezcan. Los bienes de los municipios serán de dominio público y patrimoniales. Son bienes de dominio público los destinados a un uso o servicio público, tales como las plazas, calles, avenidas, paseos y obras públicas, de servicio general sufragadas por el municipio con fondos públicos. Los bienes de dominio público son inalienables, inembargables y no están sujeto a contribución alguna. Los demás bienes de los municipios son patrimoniales, no estarán sujetos a la imposición de contribuciones, se regirán por las disposiciones correspondientes del Código Civil de Puerto Rico. Su venta, permuta, arrendamiento y gravamen solo

---

[25] *González Segarra et al. v. CFSE, supra*; *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 513 (2011).

[26] *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004); *Fuertes y otros v. A.R.Pe.*, 134 DPR 947, 953 (1993).

[27] 21 LPRA secc. 7181.

podrá efectuarse previa aprobación de la Legislatura Municipal mediante ordenanza o resolución al efecto, excepto en los casos que otra cosa se disponga en este Código. El cambio o alteración de la clasificación jurídica de los bienes municipales solo podrá realizarse en la forma prescrita por ley y en todo caso, previa justificación de la necesidad y conveniencia pública de tal cambio o alteración, salvo los recursos naturales, patrimonio arqueológico, histórico y de interés arquitectónico cuya clasificación solo podrá alterarse caso por caso mediante ley al efecto.

**III.**

Tras un análisis ponderado y minucioso del expediente ante nuestra consideración, resolvemos que no le asiste la razón a la parte recurrente. Veamos.

Respecto al primer señalamiento de error, la parte recurrente alega que la OGPe erró al excluirlos de participar en la evaluación ambiental. Tras revisar escrupulosamente las leyes y reglamentos, no existe un requisito de notificar a los colindantes durante la etapa de evaluación ambiental. Fíjese que la *"Ley Sobre Política Pública Ambiental"*, Ley 416-2004, según enmendada[28], no incluye el requisito de notificación a los colindantes[29]. Por tanto, colegimos que este error no fue cometido.

Se atenderán conjuntamente los errores segundo y tercero por estar intrínsecamente relacionados entre sí. En el segundo error, la parte recurrente reclama que la OGPe incide al otorgar el permiso de construcción impugnado, sin determinaciones de hechos ni conclusiones de derecho, como lo establece la Ley 89-2000. Referente al tercer error, alega la parte recurrente que la OGPe erró

---

[28] 12 LPRA secc.8001 *et. seq.*

[29] 12 LPRA secc. 800: Antes de que la Agencia Proponente tome la decisión final sobre la acción propuesta, deberá cumplir con el proceso de planificación ambiental y emitir un documento ambiental, ya sea determinando que la acción de que se trate tendrá un impacto significativo o que no tendrá tal impacto, el funcionario responsable del mismo consultará y obtendrá la opinión que sobre la legislación propuesta, la acción a efectuarse o la decisión gubernamental a promulgarse tenga cualquier otro organismo gubernamental con jurisdicción o inherencia sobre el impacto ambiental de dicha legislación, acción o decisión. Copia de dicho documento ambiental será enviado a la División de Evaluación de Cumplimiento Ambiental de la Oficina de Gerencia de Permisos. Dicha División será la encargada de obtener las recomendaciones de las unidades y de emitir sus recomendaciones al Director Ejecutivo de la Oficina de Gerencia de Permisos. Además, se tendrán a la disposición del público y se acompañarán a la propuesta de legislación, acción o decisión para los correspondientes procesos de examen y estudio.

al otorgar el permiso sin la debida consulta de ubicación, ya que no se demostró que es la única alternativa para satisfacer dicha necesidad, por lo cual era mandatoria una vista pública. En resumen, las alegaciones que surgen de estos dos errores es si procede que la OGPe realizara determinaciones de hecho y de derecho en su Resolución y si tienen derecho a una vista pública.

Fíjese que el Reglamento Conjunto 2023, aborda los dos errores esbozados por la parte recurrente. Veamos.

El Reglamento Conjunto 2023 claramente establece que las únicas dos instancias en las cuales una solicitud de permiso para la construcción de una torre de telecomunicaciones es de carácter discrecional es cuando se solicita una variación de los requisitos ordinarios o cuando se trata de una zona ecológicamente sensitiva. Ello, puesto que, en ambas instancias, se requiere la celebración de vistas públicas, las cuales son competencia de la Junta Adjudicativa[30]. A tales efectos, las antedichas solicitudes requerirán determinaciones de hecho y conclusiones de derecho y una vista pública.

Conforme al Reglamento Conjunto 2023 le corresponde a la Junta Adjudicativa adjudicar una solicitud de permiso para la construcción de una torre de telecomunicaciones y se cumplirá en estas áreas con las siguientes disposiciones:

a. Se observarán para dichas áreas las normas promulgadas para la ubicación y construcción de estructuras, si hubiera, mediante la tramitación de una consulta de ubicación[31]. [...]

Por otra parte, el Reglamento Conjunto 2023, dispone sobre la construcción, instalación y ubicación de las torres de telecomunicaciones en Puerto Rico[32], en específico:

Sección 9.11.1.4 Organismo Competente[33]:

---

[30] Véase, secc. 9.11.2.2 (d) y 9.11.10 (e) del Reglamento Conjunto del 2023, *supra.*
[31] *Íd.*
[32] *Véase,* secc. 9.11.1.1 del Reglamento Conjunto del 2023, *supra.*
[33] *Véase,* secc. 9.11.1.4 del Reglamento Conjunto del 2023, *supra.*

d. Las solicitudes de permiso para todo proyecto de instalación y ubicación de torres serán consideradas por el Secretario Auxiliar de la OGPe, con especial atención a aquellas propuestas para terrenos que ubiquen total o parcialmente en un área ecológicamente sensitiva que será considerada en primera instancia por el Secretario Auxiliar de la OGPe, quien solicitara recomendaciones al NET. [...]

A su vez, el Reglamento Conjunto 2023 indica las facultades, deberes y funciones del Secretario Auxiliar, a saber:

e. Firmar, expedir y notificar la determinación de cumplimiento ambiental, la adjudicación final y permisos ministeriales, aquellas discrecionales delegadas por la Junta Adjudicativa, cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico o cualquier comunicación al amparo de esta Ley[34].

No cabe duda de que, el Secretario Auxiliar es quien puede adjudicar trámites ministeriales o los delegados discrecionales, a menos que ocurran una de las dos excepciones previamente mencionadas. Así pues, tenemos claro que la normativa reglamentaria establece que la determinación de la OGPe, como en el caso de autos, es ministerial, y la Resolución no conlleva realizar determinaciones de hecho y derecho.

No obstante, corresponde verificar si la solicitud de permiso para la construcción de la torre de telecomunicaciones en La Plata Aibonito aplica la excepción de que, se trata de una zona ecológicamente sensitiva para entonces convertir el proceso en uno discrecional.

Surge del legajo apelativo que, el 16 de marzo de 2020, el Servicio Geológico de los Estados Unidos del Departamento del Interior (USGS, por sus siglas en inglés) publicó el Mapa que muestra la sensibilidad a los deslizamientos de tierra provocados por una intensa lluvia *("Map depicting susceptibility to landslides triggered by intense rainfall")*. En este, se detalló que el área donde se construirá la torre de telecomunicaciones no posee ninguna restricción que lo clasifique como un terreno susceptible a

---

[34] *Véase,* Secs. 9.11.1.4 del Reglamento Conjunto del 2023, *supra.*

deslizamientos por la USGS[35]. Por lo cual, colegimos que los errores segundo y tercero no fueron cometidos.

En su cuarto error, la parte recurrente alega que la OGPe erró al otorgar el permiso para cortar la mitad de las raíces en la línea de goteo de un árbol maduro que no le pertenece a Innovattel. Tras leer detenidamente el permiso de construcción otorgado por la OGPe, esta no concede a Innovattel llevar a cabo trabajo sobre la vegetación, raíces o árboles vecinos. El permiso concedido provee para la remoción de la capa vegetal en el lugar donde será instalada la torre, y así realizar la extracción de la corteza terrestre. Por tanto, ante la inexactitud del reclamo, este Foro carece de jurisdicción para atender el cuarto error porque el mismo no fue objeto de consideración en el permiso de construcción concedido por la OGPe.

Nos reafirmamos que, quien cuestione lo resuelto por un organismo administrativo tendrá el peso de demostrar con prueba clara robusta y convincente que existe otra prueba que justifique derrotar la presunción de corrección y regularidad que les asiste[36]. En el presente caso, la parte recurrente no presentó prueba para sustentar sus alegaciones. A tales efectos, concluimos que la OGPe no incidió al autorizar el permiso recurrido.

**IV.**

Por los fundamentos que anteceden, se confirma la resolución administrativa recurrida y, en consecuencia, se deja sin efecto la orden de paralización de la construcción.

**Notifíquese inmediatamente**.

---

[35] Apéndice 1 del Alegato de la OGPe al recurso de revisión judicial, Apéndice 6 de la Solicitud de Reconsideración sobre Paralización de Obra presentado por Innovattel.

[36] *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022), *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019); *Super Asphalt v AFI y otro* 206 DPR 803,819, 820 (2021).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones